UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DAVID CAPERS, ) | |
| ) | |
| Movant, ) | USDC Case No. 3:21-cv-____ |
| ) | |
| v. ) | |
| ) | USDC Case No. 3:17-cr-22 |
| UNITED STATES OF AMERICA, ) | |
| ) | Hon. Richard L. Young |
| Respondent. ) | United States District Judge |

FILED
05/14/2021
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

## *PRO SE* MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT A FEDERAL SENTENCE OR CONVICTION PURSUANT TO 28 U.S.C. §2255

[Return Date to be Fixed by the Court]

COMES NOW DAVID CAPERS, Movant *pro se*, in the above styled and numbered cause, and respectfully submits this Memorandum of Law in support of the Motion to Vacate pursuant to 28 U.S.C. §2255, and would show the Court the following facts, circumstances, and points of law:

## I. Introduction

Mr. Capers asks this Honorable Court to grant an out-of-time appeal, reinstate the criminal judgment on the docket, and file a notice of appeal on behalf of Mr. Capers, based on former counsel's ineffective assistance in failing to adequately consult with him on his appellate rights, following imposition of a lengthier sentence than Mr. Capers expected, based on former counsel's assessment of the sentencing consequences of the plea he entered.

## II. Jurisdiction

Pursuant to 28 U.S.C. §2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed sentence to vacate, set aside, or correct sentence." Mr. Capers so moves this Court on grounds that he was denied the effective assistance of counsel by former counsel's failure to adequately consult with him on his appellate rights.

## III. Review Standards

A motion for relief under §2255 follows the procedures established by the "Rules Governing Section 2255 Cases in the United States District Courts" ("Rules"). The text of §2255 states that "[u]nless the motion and the files and records of the case **conclusively** show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[1] Similarly, the Rules dictate that, upon initial consideration by the assigned District Judge, a §2255 motion should be dismissed only "if it **plainly** appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."[2] In all other cases, "the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take action the judge may order."[3] The Rules authorize, where appropriate

---

[1] *28 U.S.C. §2255* (emphasis added).

[2] *Rule 4(b)* (emphasis added).

[3] *Id.*

3

and by order of the Court, discovery proceedings, an expansion of the record, and an evidentiary hearing.

Subsequent to the "Preliminary Review" stage set out in Rule 4, the ultimate legal standard for motions brought pursuant to §2255 is prescribed by statute:

> If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant him a new trial or correct the sentence as may appear appropriate.[4]

---

[4] *28 U.S.C. §2255.*

# IV. Grounds for Relief

## A. Ground One:
**Mr. Capers was Deprived of the Effective Assistance of Counsel by Counsel's Failure to Adequately Consult with Him Concerning His Appellate Rights**

### [1]. The Applicable Standard

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective" legal assistance, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a claim for ineffective assistance of counsel, a movant must satisfy the "now-familiar" *Strickland* test and demonstrate that: (1) his attorney's representation "fell below an objective standard of reasonableness"; and (2) he was prejudiced by his counsel's deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (*quoting Strickland*, 466 U.S. at 687–88). The *Strickland* test applies to claims that counsel was ineffective for failing to timely file a notice of appeal. *Flores-Ortega*, 528 U.S. at 476-77; *Bednarski v. United States*, 481 F.3d 530, 535 (7th Cir. 2007).

Where a movant does not specifically direct his attorney to file an appeal, as in this case, his attorney may perform deficiently by failing to

5

adequately consult with him regarding an appeal after his sentencing. *See, e.g., Flores-Ortega*, 528 U.S. at 478 In this context, the Supreme Court defined consultation as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel has consulted with his client, then counsel cannot be found to have acted unreasonably unless he ignored his client's express wishes. *Id.* If, on the other hand, counsel has not consulted with his client, then counsel's failure to consult is unreasonable if (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480, 120 S.Ct. 1029. In determining whether counsel's failure to consult was reasonable, a court must consider "all the information counsel knew or should have known." *Id.* Factors to consider include "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the

defendant seeks an end to judicial proceedings." *Id.* However, even in cases involving a plea of guilty, the reviewing court "must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Courts also recognize that counsel must consult with the client *after* sentencing, to discharge the duty to consult under *Flores-Ortega*. *See e.g., Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 434 (6th Cir.2006) ("[T]rial counsel has a constitutional duty to consult with clients about filing an appeal after the trial proceedings have concluded...."); *see also United States v. Taylor*, 339 F.3d 973, 978 (D.C.Cir.2003) (finding that first step of *Flores-Ortega* was not satisfied where counsel advised defendant prior to sentencing of his right to appeal but failed to consult with defendant about an appeal after sentence was pronounced).

When an attorney breaches his constitutionally-imposed duty to consult, prejudice will not be presumed. Instead, under *Flores-Ortega*, a

defendant satisfies the second *Strickland* prong [the "prejudice" prong] if he shows "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484). The question is whether he "would have" appealed, not whether "his hypothetical appeal might have had merit." *Id.* at 486, 120 S.Ct. 1029; *see also Hatchett v. Kapture*, 109 Fed.Appx. 34, 37 (6th Cir.2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which requires a "substantial," not just "conceivable" likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (*quoting Strickland*, 466 U.S. at 694).

### [2]. <u>Mr. Capers Reasonably Demonstrated That He Wished to Appeal</u>

Former counsel did not consult with Mr. Capers on the potential benefits of appealing the sentence imposed.[5] Thus, it is clear that former

---

[5] *See Exhibit ("EX") #1, Declaration of David Capers in Support of Motion to Vacate, Set Aside or Correct a Federal Sentence or Conviction Pursuant to 28 U.S.C. §2255,* ¶¶8-9 ("8. At sentencing, I was crushed to receive a sentence of 200 months' imprisonment. After I received a much longer sentence that I expected, neither attorney discussed the potential benefits

counsel did not meaningfully "consult" with Mr. Capers regarding a possible appeal, particularly after sentencing, where the court imposed a term of imprisonment roughly six years longer than counsel's estimate upon review of the Pre-Sentence Investigation Report ("PSR").[6] *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 434 (6th Cir.2006) ("[T]rial counsel has a constitutional duty to consult with clients about filing an appeal after the trial

---

of appealing the sentence. 9. Neither attorney informed me that I could appeal my sentence without risking possible further punishment by challenging my plea. If I had known that I had the option of appealing my sentence only, I would have instructed my attorneys to file an appeal on my behalf.") *[all referenced EX(s) are attached to the contemporaneously submitted Motion to Expand the Record]*.

[6] *See EX #1, ¶ 7* ("After my Pre-Sentence Investigation Report ("PSR") was disclosed, Mr. Gillespie spoke to me on the telephone and informed me that I was facing classification as a career offender. I asked him what we could do and he responded that "your background is your background," and there's nothing we can do about it. I replied that this enhancement is doubling my sentence and asked him whether he thought this was something he should have warned me about. In response, Mr. Gillespie stated that the career offender enhancement is only advisory and all we needed to do was gather lots of character letters, have a good allocution, and we will be "okay" at sentencing. Specifically, Mr. Gillespie told me that I should expect a sentence within a year more or less of the 135-month-sentence imposed on my co-defendant, Emanuel Brewster.").

proceedings have concluded...."").

Former counsel had a constitutionally imposed duty to consult with Mr. Capers regarding an appeal, as (1) Mr. Capers' previous sentencing expectations[7] reasonably demonstrated to counsel that he was interested in appealing his sentence, and (2) a rational defendant, with those same sentencing expectations, would want to appeal. *Flores-Ortega*, 528 U.S. at 480. Thus, "in light of 'all the information counsel knew or should have known,'" *id.*, former counsel was constitutionally required to meet with Mr. Capers following his sentencing to discuss the potential benefits of appealing the lengthier sentence and to ascertain his wishes concerning his appellate rights. This is true because Mr. Capers reasonably demonstrated an interest in appealing – and indeed, any rational defendant, expecting a sentence of 135 months' imprisonment, give or take a year, who receives a sentence of 200 months' imprisonment could be expected to wish to appeal – former counsel's failure to consult with him concerning his appellate rights falls below the

---

[7] *See EX #1, ¶7.*

minimal level of competence required of criminal defense counsel, satisfying the performance prong of *Strickland*.

### [3]. <u>Prejudice</u>

Absent former counsel's failure to consult, there is a reasonable probability that Mr. Capers would have appealed his sentence, regardless of whether his appeal had merit. The Supreme Court recently clarified that its holding in *Flores-Ortega*, applies to criminal defendants, like Mr. Capers, who pled guilty and even to those, unlike Mr. Capers, who waived some, but not all grounds for appeal. *Garza v. Idaho*, 139 S. Ct. 738, 742, 203 L. Ed. 2d 77 (2019). ("*Flores-Ortega* applies regardless of whether the defendant has signed an appeal waiver.")

Mr. Capers has established prejudice based on the reality that the sentence imposed was roughly six years greater than the sentence he expected to receive. This fact suggests a reasonable probability that Mr. Capers would have appealed. Moreover, Mr. Capers is filing the instant *pro se* § 2255 motion in an effort to pursue a direct appeal of the sentence imposed. Mr. Capers's

11

filing of this motion in conjunction with the higher than expected sentence, is sufficient to undermine confidence in a conclusion that, had defense counsel sufficiently consulted with him, an appeal would not have been filed. *See Flores-Ortega*, 528 U.S. at 486.

## V. Equitable Tolling

### [1]. <u>The Applicable Standard</u>

To establish entitlement to equitable tolling a § 2255 movant must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010); *see also Boulb v. United States*, 818 F.3d 334, 339–40 (7th Cir. 2016). While simple miscalculation of a filing deadline by counsel is not grounds for equitable tolling, *Holland* at 651-52, 130 S.Ct. 2549, "egregious attorney misconduct of all stripes may serve as a basis for equitable tolling," *Luna v. Kernan*, 784 F.3d 640, 649 (9th Cir. 2015). Furthermore, a majority of circuits have held that affirmatively misleading a petitioner to believe that a timely petition has been

12

or will soon be filed can constitute egregious professional misconduct. *See Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir.2011); *Dillon v. Conway*, 642 F.3d 358, 363–64 (2d Cir. 2011); *Downs v. McNeil*, 520 F.3d 1311, 1322–23 (11th Cir.2008); *Fleming v. Evans*, 481 F.3d 1249, 1256–57 (10th Cir.2007); *United States v. Martin*, 408 F.3d 1089, 1094–95 (8th Cir.2005); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.2002).

### [2]. <u>Mr. Capers' Diligence</u>

Mr. Capers acted with reasonable diligence[8] by retaining licensed post-conviction counsel as soon after learning that he could appeal his sentence without disturbing his guilty plea as practicable.[9] That he was misled by that attorney and defeated in his efforts to have a timely motion to vacate

---

[8] *See Holland v. Florida*, 560 U.S. 631, 653 (2010) ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.") (internal quotations and citations omitted).

[9] *See EX #1,* ¶ 10 ("In June 2020, I retained Chicago attorney Andrea Gambino, 53 W. Jackson Blvd., Suite 1332, Chicago, Illinois 60604, to represent me in connection with a proceeding under 28 U.S.C. § 2255, including the preparation, filing and litigation of a motion to vacate under that authority."); *see also DE #367*.

submitted to this court by the extraordinary circumstances described below, should not be held against him.

### [3]. <u>The Extraordinary Circumstances</u>

After Mr. Capers retained Ms. Gambino to prepare a § 2255 motion to vacate on his behalf and provided all information she requested, she repeated mislead him by stating that she had obtained an extension of his AEDPA deadline and that she would not fail to prepare and timely file a § 2255 motion to vacate on his behalf.[10] In fact, the docket sheet reflects that Ms. Gambino not only did not file for an extension, but never even filed a notice

---

[10] *See EX #1, ¶¶ 11-12* (" 11. Ms. Gambino told me that she would file the motion to vacate after she obtained information from me concerning the details from my plea agreement. She asked me to send all relevant facts pertaining to any issues I had with my sentencing. I sent her all the facts along with my original PSR in June of 2020. She confirmed that she would file the motion to vacate once she completed her research. 12. Later, when questioned about my deadline, Ms. Gambino told me and a friend that she had filed a motion for an extension of the deadline for my §2255 motion and it had been granted, extending the deadline into December of 2020. Ms. Gambino promised me that she would not miss this extended deadline.").

14

of appearance on Mr. Capers behalf in this court. Moreover, Mrs. Gambino never prepared or submitted the promised § 2255 motion to vacate.

Ms. Gambino's misconduct in this case extends beyond an isolated misleading statement. She lied to her client about filing a motion for extension, lied to her client that this Honorable Court had granted that motion for extension of the AEDPA deadline, and lied to her client when she promised Mr. Capers that she would not fail to submit a timely § 2255 motion to vacate on his behalf. In truth, however, Ms. Gambino filed nothing in this Honorable Court and through her conscious inaction she allowed the statute of limitations to expire.

Gambino's actions in this case, considered collectively, go beyond mere garden variety negligence. Attorney mistakes that warrant the label "garden variety" — like miscalculating a filing deadline — are the sorts of mistakes that, regrettably, lawyers make all the time. They are mistakes made routinely enough that they're regarded as one of the risks petitioners typically assume when relying on counsel to litigate a case, rather than as an extraordinary

circumstance warranting equitable intervention. Courts do not recognize run-of-the-mill mistakes as grounds for equitable tolling because doing so "would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Lawrence*, 549 U.S. at 336, 127 S.Ct. 1079. No such concerns arise by granting equitable tolling on the basis of Gambino's misconduct. Her actions were "utterly deficient and unprofessional," *Doe*, 661 F.3d at 1012, and, unlike run-of-the-mill mistakes, were "far enough outside the range of behavior that reasonably could be expected" in the typical case that they may be regarded as "extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir.2003).

Mr. Capers efforts to file *pro se* after learning of Ms. Gambino's perfidy were frustrated by the FBOP's COVID-19 "lock-down" and the pandemic itself.[11] Courts have concluded that the COVID-19 pandemic "could—in

---

[11] See EX #1, ¶13 ("Over the last year, I have spent much of my time "locked-down" due to the COVID-19 pandemic. Even when the "lock-down" was eased to allow us out of our cells for an hour every other day or so, access to the prison law library was severely limited. Absent proof – a document stating that I had an open court case with a set deadline for some submission – of a imminent deadline, we are not

16

certain circumstances—conceivably warrant equitable tolling" for § 2255 motions. *United States v. Haro*, No. 8:18CR66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020). These "certain circumstances" involve defendants who had been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19. The District of Nevada, for example, granted a defendant's COVID-19-based request for equitable tolling because the pandemic had, among other things, halted ongoing investigations and prevented counsel from obtaining necessary court records. *See Dunn v. Baca*, No. 319CV00702MMDWGC, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020). But the court in that case had "little to no doubt that [the defendant and his counsel were] pursuing [the defendant's] rights diligently." *Id.; see also Cowan v. Davis*, No. 1:19-CV-00745-DAD, 2020 WL 4698968 (E.D. Cal. Aug. 13, 2020).

In several cases, § 2255 petitioners have sought equitable tolling due to prison lockdowns and the closure of prison law libraries as a result of COVID-19. In those cases, "prisoners are not entitled to equitable tolling if

---

allowed to visit the law library to conduct legal research or type documents for submission to the court.").

there is no evidence that they diligently pursued their right to file a § 2255 motion" prior to the lockdown. *United States v. Lionel Thomas*, No. CR 18-135, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020); *see also United States v. Barnes*, No. 18-CR-0154-CVE, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19-related lockdown "delayed defendant's ability to file his motion," but concluding equitable tolling was unwarranted because the defendant did not demonstrate he diligently pursued his claims).

Here, the reality that Mr. Capers was diligently working towards having a timely § 2255 motion to vacate filed on his behalf by retained counsel – Andrea Gambino – prior to and during the pandemic places him among those 2255 movants entitled to have COVID-19 considered an extraordinary circumstance, which in confluence with former counsel Gambino's misconduct, frustrated his efforts to timely file.

## VI. Prayer for Relief

Mr. Capers, having been deprived of his fundamental right to the effective assistance of counsel, guaranteed by the Fifth and Sixth Amendments to the United States Constitution, with regard to counsel's failure to consult with him concerning the benefits of an appeal, respectfully requests that this Honorable Court restore those rights by granting an out-of-time appeal, reinstating the criminal judgment on the docket, and filing a notice of appeal on behalf of Mr. Capers.

Respectfully submitted this 10TH day of May, 2021.

David Capers, *Pro Se*
Register #52476-424
FCI Greenville
P.O. Box 5000
Greenville, IL 62246

## VII. Verification

I, David Capers, verify under penalty of perjury, pursuant to 28 U.S.C. §1746 that the foregoing is true and correct. Executed this 18th day of May, 2021.

David Capers, *Pro Se*
Register #52476-424
FCI Greenville
P.O. Box 5000
Greenville, IL 62246